**UNITED STATES of America and Donald Bell, Special Agent, Internal Revenue Service**

v.

**EXXON COMPANY, U.S.A.**

**Civ. No. HM 78–157.**

United States District Court, D. Maryland.

April 14, 1978.

Russell T. Baker, U. S. Atty., Daniel M. Clements, Asst. U. S. Atty., Baltimore, Md., Edward J. Snyder and Thomas M. Lawler, Jr., Attys., Dept. of Justice, Washington, D. C., for petitioner.

David M. Kohen, Baltimore, Md., for respondent.

Allen L. Schwait and Kenneth A. Reich, Baltimore, Md., for movants.

HERBERT F. MURRAY, District Judge.

The United States and W. Donald Bell, a Special Agent of the Internal Revenue Ser-

vice (sometimes referred to as IRS) have filed a Petition under Section 7402(b) and 7604(a) of the Internal Revenue Code of 1954 to enforce an Internal Revenue Service summons served on October 27, 1977 on the respondent, Exxon Company, U.S.A. (Exxon) which maintains offices in Maryland. The summons directed that the respondent appear before Special Agent Bell on November 10, 1977 to testify and produce certain documents. Respondent failed to comply with the summons and this petition was filed, resulting in the issuance to the respondent of an Order to Show Cause why it should not be compelled to obey the Internal Revenue Service summons.

The petition and supporting affidavit of Special Agent Bell state that he is conducting an investigation of the federal income tax liabilities of Maryland Lumber Company, Fabian Kolker and M. Budd Kolker for the taxable years 1972 through 1974, inclusive, and that the documents requested relate to this investigation. The taxpayers filed a Joint Motion to Intervene as Parties Respondent on March 8, 1978. The court, having heard oral argument on the motion on April 5, 1978 and having considered all

papers filed, will now render a decision on this motion.

The motion to intervene is based on two asserted grounds: (1) that under Section 7609(b)(1) of the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 7609(b)(1) movants, as persons entitled to notice of the summons at issue in this case, are entitled to intervene as a matter of right in this summons enforcement proceeding; and (2) that movants are entitled to intervene in this action pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure.

### I.

■ The court first will consider movants' first ground for intervention under Section 7609(b)(1). Subsection (b)(1) of this section provides:

Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

Thus, the right to intervene under this section exists only if movants are persons who were entitled to notice of the summons [1]

---

1. Notice is provided for under Section 7609(a), which reads in pertinent part as follows:

§ 7609. Special procedures for third-party summonses

(a) Notice.—

(1) In General.—if—

(A) any summons described in subsection (c) is served on any person who is a third-party recordkeeper, and

(B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 14th day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain directions for staying compliance with the summons under subsection (b)(2).

(2) Sufficiency of notice.—Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of sum-

mons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.

(3) Third-party recordkeeper defined.—For purposes of this subsection, the term 'third-party recordkeeper' means—

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501(c)(14)(A));

(B) any consumer reporting agency (as defined under section 603(d) of the Fair Credit Reporting Act (15 U.S.C. 1681a(f)));

issued to Exxon by the Internal Revenue Service.

At this point, the court notes that respondent Exxon in its answer to the Order to Show Cause contends that its failure to comply with the summons is warranted because Maryland Lumber Company, Fabian Kolker and M. Budd Kolker, persons entitled to notice of the summons under 26 U.S.C. § 7609(a)(1), did not receive such notice from the Internal Revenue Service. Petitioners, both in response to the answer to the Order to Show Cause and in response to the motion to intervene, strongly urge upon the court the proposition that, in this case, no notice to Maryland Lumber Company, Fabian Kolker or M. Budd Kolker was required under 26 U.S.C. § 7609 and that all other administrative requirements were met in the issuance of this summons. It appears to the court that in making a determination on the instant motion to intervene, the court will likewise be making a determination as to the issue raised by Exxon in its answer to the Order to Show Cause. To the extent that this issue overlaps with those in the motion to intervene, the court has heard oral argument of counsel for Exxon and has considered Exxon's written submissions on this issue.

The determination of whether, in fact, movants were entitled to notice of the summons to Exxon requires that the court examine the summons at issue in this case. The summons is a third-party summons under 26 U.S.C. § 7602(2) requiring Exxon to produce:

Copies of all agreements, contracts and correspondence between you and the Maryland Lumber Company and/or Fabian Kolker and/or M. Budd Kolker which pertains [sic] to the rental of 2501 W. Franklin Street and all checks and record of payments made by you during the period from January 1, 1972 thru Dec. 31, 1974, to Maryland Lumber Co. and/or Fabian Kolker and/or M. Budd Kolker

(C) any person extending credit through the use of credit cards or similar devices;
(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4)));

under said agreements, contracts and correspondence.

It appears to the court from the arguments of counsel and the pleadings filed in this case that Special Agent Bell is attempting to have Exxon produce its lease with movants for the service station property noted in the summons, its checks paid to movants pursuant to the lease agreement, and certain other of its financial records pertaining to its lease of the Franklin Street property.

Section 7609 outlines the procedures to be followed by the IRS in the issuance of certain third-party summonses, which procedures are made applicable to those summonses issued after February 28, 1977, Section 1205(c) of Pub.L. 94–455, as amended by Pub.L. 94–528, § 2(b), Oct. 17, 1976, 90 Stat. 2483. If the summons is one issued under Section 7602(2), as is the case with the summons here at issue, notice is required to be given if the summons is served on a third-party recordkeeper and if the summons requires the production of records of business transactions of a person identified in the description of the records in the summons. Section 7609(a)(1). Maryland Lumber Company, Fabian Kolker and M. Budd Kolker were identified in the request for production in the summons and the summons does request records of certain business transactions in which the movants were involved. However, what is really at issue here is whether Exxon qualifies as a third-party recordkeeper so that this provision would be applicable to the instant summons. Movants assert that Exxon comes within the definition of a third-party recordkeeper under Section 7609(a)(3)(C) in that it extends credit through the use of credit cards. If Exxon is in fact a third-party recordkeeper under the above definition of the term, then the IRS would have been required to give written notice of the summons to movants on October 27, 1977, fourteen days prior to the date for compli-

(E) any attorney; and
(F) any accountant.

ance with the summons by Exxon. Further, if movants are entitled to notice under this section, they are entitled to intervene in the proceedings to enforce the summons under subsection (b) of this section and they also were entitled to stay compliance by Exxon with the summons by giving written notice to Exxon not to comply and by sending a copy of this notice to the IRS under conditions which would have been contained in the original notice of IRS to movants. In this case, the IRS did not provide notice to movants and notice of the issuance of the summons was received informally by means of a letter dated November 2, 1977 from Exxon to the movants. In turn, movants, by letter to Exxon dated November 4, 1977, sent notice not to comply, and sent a copy of this notice to Special Agent Bell. Exxon notified the IRS by letter dated November 7, 1977 of its position that it was a third-party recordkeeper under Section 7609, that it had been requested not to comply with the summons by the movants and that it would not, therefore, comply. As a result of this non-compliance by Exxon with the summons, the instant action was commenced.

■ The court must determine whether Exxon is a third-party recordkeeper within the meaning of Section 7609, as the notice issue turns on the outcome of that question. More broadly, the issue presented is whether, when a summons is issued for records which pertain to the taxpayer, the taxpayer has a statutory right to intervene in the enforcement proceedings against the third party on whom the summons was served when that third party is a third-party recordkeeper by reason of issuance of credit cards in an aspect of its business which is unrelated to the records sought in the summons.

The court has sought in vain to locate a case which has interpreted the Section 7609 notice requirements or the meaning to be given to the term "third-party recordkeeper." This lack of reported case law most probably is due to the fact that the notice requirement was not made to apply to IRS summonses until after February 28, 1977, a

relatively short time ago. Counsel for the parties in this case have informed the court that they, likewise, have been unable to locate a reported case dealing with the question here presented and counsel for the IRS has further informed the court that, currently, two other cases involving this question are pending in other federal district courts but that those cases have not progressed to a point where a decision has been rendered on this question. Although there is no decided case interpreting the Tax Reform Act of 1976, P.L. 94–455, which amended Section 7609 particularly with regard to the procedural requirements for third-party summonses, the legislative history of the Act does cast some light on its meaning.

The House Report mentions as one of the general reasons for the change in the law the need to balance the IRS's investigative tools with the concern for the privacy of individuals:

> The use of the administrative summons, including the third-party summons, is a necessary tool for the IRS in conducting many legitimate investigations concerning the proper determination of tax. The administration of the tax laws requires that the Service be entitled to obtain records, etc., without an advance showing of probable cause or other standards which usually are involved in the issuance of a search warrant. On the other hand, the use of this important investigative tool should not unreasonably infringe on the civil rights of taxpayers, including the right to privacy. H.R.Rep. No. 94–658, 94th Cong., 2nd Sess. 307, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 2897, 3203.

The House Report went on to state that the notice is to be sent to the person who is identified in the description of the records contained in the summons "as the person relating to whose business or transactions the books or records are kept." *Id.* at 3204. The implication is that notice is required when the person's records of his business transactions are kept by a third person. The Senate Report indicated what was felt

to be the definition of this third-party recordkeeper when it stated:

> For purposes of these rules, a third party recordkeeper is generally to be a *person engaged in making or keeping the records involving transactions of other persons.* For example, an administrative summons served on a partnership, with respect to records of the partnership's own transactions, would not be subject to these rules. (emphasis supplied) S.Rep. No. 94–938, 94th Cong., 2nd Sess. 369, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 2897, 3798.

This definition was further clarified in the House Conference Report wherein it was stated:

> . . . the agreement clarifies the definition of a third-party record keeper, limiting this category to attorneys, accountants, banks, trust companies, credit unions, savings and loan institutions, credit reporting agencies, issuers of credit cards, and brokers in stock or other securities. H.R.Conf.Rep. No. 94–1515, 94th Cong., 2nd Sess. 486, *reprinted in* [1976] U.S.Code.Cong. & Admin.News, pp. 2897, 4190.

Thus, although the list of third-party recordkeepers includes those who issue credit cards and Exxon surely falls within this category, in that it issues to consumers credit cards which are generally used for the purchase of gasoline and other automobile related services, the underlying rationale of the amendment and the definition of third-party recordkeepers is to protect a citizen against the invasion of his privacy when his records are maintained or made by another. A person's credit transactions using his Exxon credit card come within this rationale and had the summons in issue in this case been for the credit transaction records of movants, the court would have little difficulty in deciding that notice was required under Section 7609. However, the records sought by the instant summons are not the credit records of movants and do not appear to involve directly the type of business transactions contemplated in the statute. The records sought more directly involve the business transactions of Exxon—its lease of a property from movants and its payments of rent on the same property. Although Exxon does make and keep the records of the transactions of other persons in carrying out its functions as an issuer of credit cards, the records at issue here more properly involve Exxon's own transactions and would not be subject to the notice rule. For the court to hold otherwise would necessitate a determination on the part of this court that the fact that a person or company issues credit cards to some persons automatically places all records of any transactions of any nature of that person or company within the notice requirement of Section 7609. This would place a burden on IRS investigators which would far exceed the intent of the Congress as expressed in the legislative history of the amendment to Section 7609. In the absence of evidence of an express purpose on the part of Congress to place such a burden on the IRS, this court is not inclined to read Section 7609 so broadly as to find a notice requirement in the issuance of the present summons. Accordingly, the court finds that no notice to movants was required by the IRS when it issued the summons to Exxon. As Section 7609(b)(1) requires that a person be one who is entitled to notice of a summons before a right to intervene under that section exists, the court further finds that Maryland Lumber Company, Fabian Kolker and M. Budd Kolker have no right of intervention under Section 7909(b)(1)in the proceedings to enforce the IRS summons to Exxon.

## II.

Movants' assertion that they are entitled to intervene in this enforcement proceeding under Rule 24(a) and (b) of the Federal Rules of Civil Procedure is based on the allegation that "the summoned records relate to them, they are the subject of the tax investigation pursuant to which the summons was purportedly issued, they have an interest in the subject matter of this action which would be affected adversely if they are not allowed to intervene to raise their defenses to the summonses and they have

no other adequate remedy at law to contest the lawfulness of said summons." Movants have also asserted that their interests are not adequately represented by the parties to this action. Movants, in their Response to Petition to Enforce an Internal Revenue Service Summons, assert two defenses to the enforcement of this summons: (1) that the IRS failed to comply with the requirements of Section 7609 with respect to notice to the movants, and (2) that the summons was issued solely for the purpose of obtaining evidence for the possible criminal prosecution of movants and others.

Both movants and petitioners have referred the court to the Supreme Court's decision in *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970), as the authority on whether a taxpayer should be allowed to intervene in a proceeding to enforce an IRS summons which is issued pursuant to an investigation of that taxpayer. In *Donaldson*, the IRS was investigating the income tax returns of Donaldson for certain years and as part of that investigation the special agent conducting the investigation issued a Section 7602 summons to Donaldson's former employer and the employer's accountant. The IRS was seeking to obtain through the summons most of the employer's records having to do with Donaldson. Donaldson obtained a temporary restraining order preventing the employer and its accountant from complying with the summons and the IRS then sought judicial enforcement of the summons in the district court. The district court issued an Order to Show Cause against the employer and the accountant and Donaldson sought to intervene in the proceedings under Rule 24(a) of the Federal Rules of Civil Procedure. The district court denied the motion to intervene and the Fifth Circuit Court of Appeals affirmed this decision. *United States v. Mercurio*, 418 F.2d 1213 (5th Cir. 1969). The Supreme Court unanimously affirmed the Circuit Court's ruling.

Initially, the Supreme Court found that Donaldson had no claim of privilege and no proprietary interest in the summoned records:

[E]ach of the summonses here, we repeat, was directed to a third person with respect to whom no established legal privilege, such as that of attorney and client, exists, and had to do with records in which the taxpayer has no proprietary interest of any kind, which are owned by the third person, which are in his hands, and which relate to the third person's business transactions with the taxpayer. 400 U.S. at 523, 91 S.Ct. at 538.

Finding, in turn, that Donaldson did not have the requisite interest in the property which was the subject of the action to fulfill the requirements of Rule 24(a) intervention, the Court stated:

[T]he material sought, as has been noted, consists only of Acme's routine business records in which the taxpayer has no proprietary interest of any kind, which are not the work product of his attorney or accountant, and which enjoy no established attorney-client or other privilege. Donaldson's only interest—and of course it looms large in his eyes—lies in the fact that those records presumably contain details of Acme-to-Donaldson payments possessing significance for federal income tax purposes.

\* \* \* \* \* \*

. . . [T]his interest cannot be the kind contemplated by Rule 24(a)(2) when it speaks in general terms of 'an interest relating to the property or transaction which is the subject of the action.' What is obviously meant there is a significantly protectable interest. And the taxpayer, to the extent that he has such a protectable interest, as, for example, by way of privilege, or to the extent he may claim abuse of process, may always assert that interest or that claim in due course at its proper place in any subsequent trial. *Cf. United States v. Blue*, 384 U.S. 251, [86 S.Ct. 1416, 16 L.Ed.2d 510] (1966).

We therefore hold that the taxpayer's interest is not enough and is not of sufficient magnitude for us to conclude that he is to be allowed to intervene. Were we to hold otherwise, as he would have us

do, we would unwarrantedly cast doubt upon and stultify the Service's every investigatory move. 400 U.S. at 530–531, 91 S.Ct. at 542.

*See also Couch v. United States,* 409 U.S. 322, 326–327, 93 S.Ct. 611, 34 L.Ed.2d 548 (1972); *United States v. Kessler,* 338 F.Supp. 420 (S.D.Ohio 1972).

■ In the instant case, this court is confronted with a situation not only similar to that in *Donaldson,* but basically identical. The records of Exxon sought by the IRS are owned by Exxon and relate to Exxon's business transactions with movants with respect to the rental of certain of movants' property by Exxon. Thus, it cannot be said that movants have any proprietary interest in these records. At most, it can be said that movants' interest lies in the fact that these records contain information concerning payment of rent income to the movants by Exxon which may have some bearing on their tax liabilities for the years under investigation by the IRS. Further, the records sought by the IRS are not subject to any established privilege which would bring movants within the language of Rule 24(a). The court finds that movants have no "significantly protectable interest" in the records which are the subject of the summons at issue in this case and that movants are not entitled to intervene in this action under Rule 24(a).

As to movants' assertion that they are entitled to intervene in this action under Rule 24(b) which provides for permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common," this court is guided by the Fifth Circuit Court of Appeals' decision in *United States v. Newman,* 441 F.2d 165 (1971). *Newman* involved a case wherein the IRS sought enforcement of certain third-party summonses issued in aid of the investigation of the tax liabilities of taxpayer Pollack. The district court issued an Order to Show Cause and the taxpayer sought leave to intervene in the enforcement proceedings. The response of the taxpayer to the Order to Show Cause alleged that the special agent who had is-sued the summons had acted in bad faith and that the agent was "simply looking for evidence to use in a criminal proceeding." 441 F.2d at 168. The district court allowed the taxpayer to intervene and the circuit court reversed this decision of the district court, finding that the facts that the records sought by the summons related to the taxpayer's own tax liability and that a recommendation for criminal prosecution could result from the investigation were not sufficient to warrant either intervention of right or permissive intervention under Rule 24. In finding that intervention of right was precluded, the court relied on the decision of the Supreme Court in *Donaldson, supra,* having found that the case before it was identical to the *Donaldson* case in terms of the allegations presented by the taxpayer. 441 F.2d at 171–172.

In considering the taxpayer's reliance on permissive intervention under Rule 24(b), the court in *Newman* found that the decision in the *Donaldson* case precluded this form of intervention although the Court had been concerned only with intervention of right:

> . . . *Donaldson* —upholding a denial of intervention—compels rejection of intervention on discretionary grounds. In the course of its analysis of the *Reisman* dictum and the limitation of it to "the situation of a pending criminal charge or, at most, of an investigation solely for criminal purposes," (see Note 24, *supra* ), the Court makes this decisive declaration:
>
> > "Any other holding, of course, would thwart and defeat the appropriate investigatory powers which the Congress has placed in 'the Secretary or his delegate.' "
>
> 400 U.S. at 533, 91 S.Ct. at 544, 27 L.Ed. at 591.

Bearing in mind that the allegations here are the identical ones there, this is a flat holding that on charges of this kind intervention by a taxpayer in a summmons proceeding against a third party witness would thwart and defeat the policies and mechanisms ordained by Congress. It is the *intervention* in such

situation, not the technical basis—as of right or permissive—for permitting it which thwarts and defeats. Clearly the Court did not mean to allow a single District Judge in the exercise of a wide and often undefinable discretion to ignore if not judicially repeal policies prescribed by the Congress.

Intervention in these circumstances is to be rejected, not by retrenching from the liberal application of the Federal Rules which the amendment reflected, . . . .. Rather it is because valid Congressional policies would be adversely affected if this "outsider" were permitted to take over the controversy significantly. To permit this "would unwarrantedly cast doubt upon and stultify the Service's every investigatory move." (citations omitted) (emphasis in the original) 441 F.2d at 172–173.

*See also United States v. Wright Motor Co., Inc.,* 536 F.2d 1090 (5th Cir. 1976); *Garrett v. United States,* 511 F.2d 1037 (9th Cir. 1975).

■ This court has found that the allegations of movants in this case are identical to those presented in the *Donaldson* case, and thus, identical to those presented in the *Newman* case. Additionally, this court finds the reasoning of the *Newman* case to be convincing on the question of the taxpayer's entitlement to permissive intervention in an action to enforce an IRS summons where the taxpayer asserts that the records sought relate to his tax liability and that the summons is being used for the purpose of obtaining evidence to use in a criminal prosecution. Accordingly, this court will deny movants' motion for permissive intervention in this action under Rule 24(b).

During the course of oral argument on this motion, counsel for movants and Exxon indicated that the enactment of Section 7609 effectively overruled the Supreme Court's decision in *Donaldson, supra.* Although this court does not attempt to determine the extent, if any, to which Section 7609 overrules the *Donaldson* decision, the court notes that, in any event, the *Donald-*

*son* decision remains good law for purposes of the instant motion. It is clear that Section 7609 has created a statutory right to intervention not previously existing for taxpayers; however, this right is a limited one in that it applies only to those taxpayers or persons who are entitled to notice of the summons under Section 7609(a). Thus, as to those taxpayers who are not entitled to notice under Section 7609(a), no right of intervention has been created under Section 7609(b) and the *Donaldson* decision remains as controlling as to any rights of intervention of such taxpayers under Rule 24. In turn, *Donaldson* and the cases interpreting *Donaldson,* such as *Newman, supra,* remain in full force and effect as to the movants in this case, as this court has found that movants were not entitled to notice of the IRS summons to Exxon under Section 7609(a).

One additional matter remains for the court's consideration. Counsel for the IRS and counsel for Exxon stated during the course of oral argument on the motion to intervene that in the event the court were to find that movants were not entitled to notice of the summons in this case in finding that movants were not entitled to intervene in this action under Section 7609(b), then Exxon's sole objection to compliance with the summons would have been ruled upon by the court and the court could issue an appropriate order compelling compliance by Exxon with the IRS summons.

■ Before an IRS summons which seeks the production of records and documents of a taxpayer can be enforced, the IRS must meet four requirements:

(1) an investigation must be conducted pursuant to a legitimate purpose; (2) the inquiry must be relevant to that purpose; (3) the information sought must not already be within the possession of the IRS; and (4) the required administrative steps must have been followed. *United States v. Richards,* 431 F.Supp. 249, 251 (E.D.Va.1977).

*See also United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The IRS contends that all four criteria have been met, while Exxon has chal-

lenged the summons only as to the fourth requirement (the need to follow all administrative steps), alleging that the IRS has failed to comply with Section 7609 by not giving the required notice to movants. As the court has determined that the IRS was not required to give any notice to these taxpayers under Section 7609(a), the court finds that Exxon's sole objection to enforcement of the instant summons is without merit and that Exxon has failed to show cause why the summons in this case should not be enforced.

For the foregoing reasons, it is this 14th day of April, 1978, by the United States District Court for the District of Maryland,

*ORDERED :*

(1) that the Joint Motion of the Maryland Lumber Company, Fabian Kolker and M. Budd Kolker to Intervene as Parties Respondent be, and the same hereby is, *Denied* ;

(2) that Exxon Co., U.S.A. is to comply with the summons issued to it in each and every requirement and that Exxon Co., U.S.A. is to produce the documents called for by the summons which have not yet been produced before petitioner, W. Donald Bell, or any other proper officer of the Internal Revenue Service, at such time and place as may hereafter be fixed by Special Agent Bell or any other proper officer of the Internal Revenue Service; and

(3) that the United States' petition to recover its costs in maintaining this action be, and the same hereby is, *Denied.*