## In re GRAND JURY SUBPOENA (CONNECTICUT SAVINGS BANK).

### Misc. No. N.H. 237.

United States District Court, D. Connecticut.

Dec. 17, 1979.

Ronald J. Cohen, Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for Connecticut Savings Bank.

## MEMORANDUM OF DECISION

ELLEN B. BURNS, District Judge.

The Connecticut Savings Bank has moved to quash a subpoena served on it requiring the production of certain bank records before a federal grand jury on the ground that the service of the subpoena failed to comply with § 36–9l of the Connecticut General Statutes. This section authorizes disclosure of such financial records pursuant to a lawful subpoena "if such subpoena . . . or a certified copy thereof is also served upon the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed, provided a court of competent jurisdiction, for good cause, may waive service of such subpoena . . . or certified copy thereof, upon such customer . . ." In contesting the subpoena, the bank points to vulnerability under C.G.S. § 36–9n, which provides criminal penalties for bank officers or employees who knowingly and wilfully furnish financial records in violation of the Connecticut act.

Concededly, in this case, no service of the subpoena in issue or any copy thereof has been made on the customer involved nor was such a service waived by a court of competent jurisdiction. However, the Government contends that the procedure followed here is governed by the Right to

Financial Privacy Act of 1978, 12 U.S.C. §§ 3401 et seq., § 3413(i) of which specifically exempts grand jury subpoenas from the similar ten-day notice provisions of the federal act, and argues that Congress intended to preempt the field and that, where the federal law conflicts with the state provisions, the federal law, under the Supremacy Clause, art. VI, cl. 2, of the Constitution, which declares that the federal law "shall be the supreme Law of the Land," controls.

The most recent relevant Supreme Court analysis of the law applicable to federal-state conflict is found in *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1977) in which the court at page 157, 98 S.Ct. 988 quoted from the earlier case of *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) as follows:

> "[The congressional] purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it . . . Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . . Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose . . . ." [Citations omitted]

The *Ray* court further stated that "[e]ven if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent it actually conflicts with a valid federal statute. A conflict will be found 'where compliance with both federal and state regulations is a physical impossibility . . .' . . . or where the state 'law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' . . . [Citations omitted]

The Right to Financial Privacy Act of 1978 was intended by Congress "to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity. Therefore, the [act] seeks to strike a balance between customers' right of privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations." H.R.Rep.No.1383, 95th Cong., 1st Sess. 33, reprinted in [1978] U.S.Code Cong. & Admin.News, pp. 9273, 9305. Although grand jury subpoenas were exempted from the notice and challenge provisions of the Act, use of the records obtained pursuant to such a subpoena is carefully circumscribed. The records "(1) shall be returned and actually presented to the grand jury; (2) shall be used only for the purpose of considering whether to issue an indictment or presentment by the grand jury, or of prosecuting a crime for which that indictment or presentment is issued, or for a purpose authorized by rule 6(e) of the Federal Rules of Criminal Procedure; (3) shall be destroyed or returned to the financial institution if not used for one of the purposes specified in paragraph (2); and (4) shall not be maintained, or a description of the contents of such records shall not be maintained by any Government authority other than in the sealed records of the grand jury, unless such record has been used in the prosecution of a crime for which the grand jury issued an indictment or presentment or for a purpose authorized by rule 6(e) of the Federal Rules of Criminal Procedure." 12 U.S.C. § 3420. The congressional intent to strike a balance between the competing interests of customer privacy and legitimate law enforcement investigation is particularly apparent in the statutory provisions relative to the grand jury subpoena exempted from the act but subject to the limited use of materials obtained thereunder.

This congressional intent not to impede legitimate investigations would be frustrated by the application of the state notice and challenge provisions which serve as an obstacle to the accomplishment of the congressional objective. To find otherwise gives rise to the potential that, in each of the fifty states, despite the existence of a valid congressional enactment setting forth

the power of the federal grand jury to obtain documents relative to its investigation, the congressional intent could be subverted by the enactment of peculiarly local requirements. Insofar as the Connecticut statute in imposing a notice and challenge procedure would undermine the authority given the grand jury by the federal act, it is in conflict as explicated by *Ray, supra.*

Accordingly, the motion to quash the subpoena duces tecum is denied.